# 23-738

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

MUHAMMAD TANVIR, et al.,
*Plaintiffs-Appellants*,

v.

"JOHN" TANZIN et al.,
*Defendants-Appellees*.

On Appeal from the United State District Court
for the Southern District of New York

**BRIEF OF CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN
AMERICA AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-
APPELLANT**

Christina A. Jump
Samira S. Elhosary
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, TX 75080
(972) 914-2507
cjump@clcma.org
selhosary@clcma.org
*Attorneys for Amicus Curiae*

August 4, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE BRIEF OF AMICUS CURIAE ................................................................... 1

SUMMARY OF ARGUMENT ............................................................... 2

INTRODUCTION ................................................................................. 3

ARGUMENT .......................................................................................... 5

   I.   RFRA's Language Sufficiently Placed Defendants on Notice that Their Behavior Substantially Burdened Plaintiffs' Exercise of Religion ...................... 5

      A.  Legislative History Demonstrates Congress' Intent to Provide Broad Protection ......................................................................... 6

      B.  This Court's RFRA Precedent Placed Defendants on Notice of Clearly Established Law ............................................................... 10

   II.  The Southern District of New York's Qualified Immunity Analysis Conflicts with Other Circuits ................................................................ 14

CONCLUSION ..................................................................................... 17

CERTIFICATE OF COMPLIANCE .................................................... 19

CERTIFICATE OF SERVICE ............................................................. 20

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Church of the Lukumi Babalu Aye v. City of Hialeah*
   508 U.S. 520 (1993) ...................................................................8

*Emp. Div. v. Smith*
   494 U.S. 872 (1990) ................................................. 6, 7, 8, 9

**Circuit Court Cases**

*Ballentine v. Tucker*
   28 F.4th 54 (9th Cir. 2022) ..................................................16

*Baxter v. Roberts*
   54 F.4th 1241 (11th Cir. 2022) .............................................17

*Buck v. City of Albuquerque*
   549 F.3d 1269 (10th Cir. 2008) ...........................................14

*Clark v. Coupe*
   55 F.4th 167 (3d Cir. 2022) ................................................ 14

*Crane v. Utah Dep't of Corr.*
   15 F.4th 1296 (10th Cir. 2021) ...........................................15

*Estate of Harmon v. Salt Lake City*
   No. 20-4085, 2021 U.S. App. LEXIS 39942 (10th Cir. Nov. 10, 2021) ...... 15, 16

*Estate of Reat v. Rodriguez*
   824 F.3d 960 (10th Cir. 2016) .................................................. 14, 15

*Griffin Indus., Inc. v. Irvin*
   496 F.3d 1189 (11th Cir. 2007) ...........................................17

*Halcomb v. Ravenell*
   992 F.3d 316 (4th Cir. 2021) ............................................. 14

*Hankins v. Lyght*
   441 F.3d 96 (2d Cir. 2006) ................................................. 5, 11, 12

*Hardeman v. Curran*
   933 F.3d 816 (7th Cir. 2019) ............................................. 14

*Johnson v. Killian*
 680 F.3d 234 (2d Cir. 2012) ...................................................................... 5, 10, 11

*Jolly v. Coughlin*
 76 F.3d 468 (2d Cir. 1996) ...................................................................... 5, 12, 13

*Mack v. Yost*
 63 F.4th 211 (3d Cir. 2023) ...................................................................... 2

*Malik v. Brown*
 71 F.3d 724 (9th Cir. 1995) ...................................................................... 2

*Montero v. Nandlal*
 597 Fed. Appx. 1021 (10th Cir. 2014) ....................................................16

*Ralston v. Cannon*
 No. 19-1146, 2021 U.S. App. LEXIS 23544 (10th Cir. Aug. 9, 2021) ..............15

*Sampson v. Cnty. of L.A.*
 974 F.3d 1012 (10th Cir. 2020) ...............................................................16

*Stryker v. City of Homewood*
 978 F.3d 769 (11th Cir. 2020) ...............................................................17

*Thomas v. Kaven*
 765 F.3d 1183 (10th Cir. 2014) ...............................................................15

**District Court Cases**

*Tanvir v. Tanzin*
 13-CV-6951, 2023 U.S. Dist. LEXIS 31227 (S.D.N.Y. Feb. 24, 2023) 2, 9, 11, 14

**Legislative Materials**

Religious Freedom Restoration Act of 1993, 103 S. Rpt 111 (1993) .............. 5, 8, 9

**Statutes**

Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb-1 (2023).................. 3

**Constitutional Amendments**

U.S. Const. amend. I ................................................................................ 4

iv

**STATEMENT OF IDENTITY, INTEREST,**
**AND AUTHORITY TO FILE BRIEF OF AMICUS CURIAE**

*Amicus curiae*, the Constitutional Law Center for Muslims in America ("CLCMA" or "*Amicus*") is the legal division of the Muslim Legal Fund of America and a 501(c)(3) non-profit legal center dedicated to protecting the rights of Muslims through the federal courts.[1] *Amicus* provides representation and counsel to individuals and organizations through civil litigation, criminal defense, immigration, and non-profit departments. CLCMA's civil litigation department litigates cases ranging from employment discrimination to federal watchlist-related travel issues. In its work, *Amicus* represents individuals faced with situations very similar to those presented by the facts of the case before this Court. Our clients experience retaliatory actions by federal government agents for refusing, on religious grounds, to act as informants against their communities. Therefore, *Amicus* maintains an ongoing concern for the application of qualified immunity by the federal courts, as it affects many of our clients.

Per Federal Rule of Appellate Procedure 29, *Amicus* sought consent to file this brief from both parties on June 27, 2023 via email. Counsel for both parties consented to *Amicus*' filing of this brief.

---

[1] Counsel for *Amicus* drafted this Brief in its entirety. No party or person other than *Amicus* contributed money to fund preparing or submitting this Brief.

1

## SUMMARY OF ARGUMENT

Qualified immunity does not apply in this case because the language in the Religious Freedom Restoration Act ("RFRA") gave Defendants-Appellees sufficient notice of clearly established law that rendered their conduct illegal. RFRA's legislative history, including its origins and the sponsors' goals, sufficed to provide notice to Defendants-Appellees that Congress intended RFRA's broad protections. Congress enacted RFRA to enshrine strong protections that the Supreme Court eliminated through its holdings.

Furthermore, this Court's precedent predating the 2007-2012 events set forth in the Complaint interprets RFRA's language as providing comprehensive protection to litigants with religion-based complaints. This Court consistently applies RFRA broadly as Congress intended, recognizing the religious protections it offers.

The district court here erred in narrowing the issue to "the right not to be pressured by law enforcement to inform on members of their religious communities through the coercive or retaliatory use of the No Fly List.'" *Tanvir v. Tanzin*, 13-CV-6951, 2023 U.S. Dist. LEXIS 31227, at *25-26 (S.D.N.Y. Feb. 24, 2023). By contrast, other circuits appropriately consider the proper religious implications when evaluating similar fact patterns. *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (determining that a guard violated an inmate's rights even when the inmate voluntarily changed his behavior to avoid further substantial burden); *Malik v.*

*Brown*, 71 F.3d 724, 729 (9th Cir. 1995) (highlighting cases that demonstrate that prisons must make basic accommodations for religious exercise). The district court improperly distinguished multiple applicable cases providing relevant precedent that qualified immunity should not apply in similar circumstances. Because general principles and statutory language often suffice to create reasonable notice, *Amicus* respectfully requests that this Court reverse the district court's holding and remand with instructions for the district court to apply the appropriate legal tests.

## INTRODUCTION

Free exercise of religion forms the bedrock of our nation. This principle motivated the founders and weaves throughout our founding legal documents. Congress recognized and reinforced this reality when it enacted the Religious Freedom Restoration Act ("RFRA") in 1993.[2] Even before RFRA's enactment, this principle remained prevalent in legal precedents at all levels of our courts. No aspect of law in the United States permits placing substantial burdens on individuals' religious expression unless a compelling governmental reason exists to outweigh this fundamental right. The government claims its agents could not have known about laws protecting religious freedom. Yet our nation's founders formed our country on that very cornerstone, and our laws continue to reinforce it today. Claimed ignorance by government officials of the legal protections afforded to

---

[2] Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb-1 (2023).

religious freedom lack credibility and support, and contradict both federal laws and this Court's precedent. RFRA's language creates clearly established law preventing the substantive burdening of religious freedom without a compelling government interest. The district court incorrectly required Plaintiffs-Appellants to prove that Defendants-Appellees violated a more specific right than other courts across the country have required.

Defendants-Appellees, FBI agents acting in the course of their official duties ("Defendants," the "Agents," or the "FBI Agents"), claim ignorance of this principle. They seek qualified immunity for violating Plaintiffs-Appellants' ("Plaintiffs") rights to the free exercise of their religion under the First Amendment to the U.S. Constitution and the statutory language of RFRA.[3] In granting qualified immunity to the Agents and dismissing Plaintiffs' claims under RFRA, the district court ignored the long history of free exercise of religion jurisprudence in this nation's courts and RFRA's statutory language. Defendants knew or should have known that the coercive use of tools like the No Fly list violated those long-standing principles. The district court incorrectly concluded otherwise.

*Amicus* respectfully submits this Brief to extrapolate the relevant legislative intent and history surrounding RFRA and its enactment. RFRA serves as an integral

---

[3] *See id;* U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof").

protection of religious freedom, a concept central to this nation's identity and *Amicus'* mission as a non-profit law center. The district court's decision dilutes the statute, specifically as applied to Muslim Americans like these Plaintiffs. *Amicus* acutely recognizes the legal impact of this erroneous holding and encourages this Court to reverse the district court's decision.

## ARGUMENT

### I. RFRA's Language Sufficiently Placed Defendants on Notice that Their Behavior Substantially Burdened Plaintiffs' Exercise of Their Religion

The district court incorrectly found the language of RFRA insufficient to put Defendants on notice that they violated clearly established law. Both the legislative history of the statute and this Court's precedent, predating the events underpinning this lawsuit, demonstrate that RFRA forbids the Agents' actions. Congress expressly intended RFRA to provide broad protection for religious expression rather than constrict it further.[4] Since RFRA's enactment, this Court's jurisprudence recognizes RFRA's comprehensive reach.[5] Qualified immunity should not excuse Defendants' failure to abide by the statute.

---

[4] Religious Freedom Restoration Act of 1993, 103 S. Rpt 111 (1993) (hereinafter "RFRA Senate Report") ("[T]he right to observe ones faith, free from Government interference, is among the most treasured birthrights of every American[.]").

[5] *See Johnson v. Killian*, 680 F.3d 234, 239 (2d Cir. 2012) (finding an inmate need not exhaust administrative remedies under each subsequent warden to bring a RFRA claim); *Hankins v. Lyght*, 441 F.3d 96, 102 (2d Cir. 2006) (determining RFRA constitutes Congress' most unambiguous statement that RFRA displaces judge-made common law on matters of religion); *Jolly v. Coughlin*, 76 F.3d 468, 475 (2d

### A. Legislative History Demonstrates Congress' Intent that RFRA Provide Broad Protection

Congress enacted RFRA in the aftermath of the Supreme Court's 1990 decision in *Employment Division v. Smith*, which lowered the standard of review for cases challenging a facially neutral law that burdened religion. 494 U.S. 872, 879 (1990). Following public condemnation from both ends of the political spectrum, Congress reinstated the compelling interest standard via legislation with RFRA. Congress clarified that it sought to strengthen protections for Americans' free exercise of religion, not limit that right.

In *Employment Division*, two Native American respondents sought relief from an Oregon state statute prohibiting controlled substance possession without a doctor's prescription. *Id*. at 874. The respondents lost their jobs at a drug rehabilitation facility after ingesting peyote, considered a controlled substance, during a religious ritual. When they applied for unemployment benefits, the state agency deemed them ineligible because they had committed work-related "misconduct." *Id*. After the Oregon Supreme Court determined that the state may appropriately withhold employment benefits based on the criminal statute and that

---

Cir. 1996) (holding the "broad language of RFRA" clearly includes incarcerated individuals).

6

the law did prohibit even religious consumption, the U.S. Supreme Court granted review. *Id*. at 876.

In the opinion of the Court, Justice Scalia declared "compelling" interest too strict of a test to ask the government to meet when seeking to enforce a law of general applicability, like the prohibition of controlled substances. *Id*. at 878. The Court opined that "anarchy" would result from invalidating all laws of general applicability that incidentally affect religious practice. *Id*. at 888. Instead, the Court determined that its jurisprudence holds that individuals' religious beliefs do not support their failure to comply with an otherwise valid, religion-neutral law. *Id*. at 878. In reviewing recent Supreme Court cases, Justice Scalia observed that the Court rarely invalidated a government action by using the compelling interest test. He concluded by finding the test inapplicable to freestanding free exercise cases, untethered to another enumerated right such as speech or assembly. *Id.* at 885.

Though concurring with the judgment, Justice O'Connor criticized the Court's abandonment of the compelling interest test. Justice O'Connor wrote that the First Amendment acknowledges no difference between laws that burden religious exercise on purpose and those of general applicability that incidentally burden religious exercise. *Id.* at 894 (O'Connor, J., concurring). She characterized the majority's opinion as "a strained reading of the First Amendment," disregarding the Court's regular application of the compelling interest test to generally applicable

regulations. *Id.* at 892 (O'Connor, J., concurring). Instead, Justice O'Connor encouraged finding a compelling interest in Oregon's prohibition of possessing a controlled substance and upholding the state law based on the applicable test.

RFRA constituted Congress' response to the Supreme Court's repudiation of the compelling interest test in *Employment Division*. In 1992, the Senate Judiciary Committee held a hearing on similar legislation to what ultimately became RFRA. At that hearing, the Committee heard testimony from individuals on all sides of the religious and political spectrum, from the Home School Legal Defense Association president to the general counsel for the U.S. Catholic Conference and law professors. Religious Freedom Restoration Act of 1993, 103 S. Rpt 111 (1993) (hereinafter "RFRA Senate Report").

RFRA's legislative history highlights many facially neutral laws that "severely undermined religious observance by many Americans."[6] The Senate pointed to Justice O'Connor's concurrence, recognizing that few laws reasonably directly prohibit or restrict free exercise; most, if not all, indirectly burden free exercise. *Employment Division* temporarily created a lowered standard of review for facially neutral laws and lesser constitutional protection for religious activity. Reverend Oliver S. Thomas testified before the Senate on behalf of the Baptist Joint

---

[6] *See* RFRA Senate Report, *supra* note 4 (highlighting *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993) and the harmful effects on the free exercise of religion of even facially neutral regulation).

Committee on Public Affairs and the American Jewish Committee, explaining "[G]overnments throughout the U.S. have run roughshod over religious conviction … In time, every religion in America will suffer."[7] With this background in mind, Congress resolved that protection for free exercise "to the fullest extent possible" necessitated legislation to overrule the Supreme Court's decision in *Employment Division*. *See* RFRA Senate Report (citing *Emp. Div.*, 494 U.S. at 903) (O'Connor, J., concurring)). So, Congress enacted RFRA, restoring the compelling interest standard through legislation. *Id.*

This extensive and well-documented history makes clear that, at the time of the relevant facts in this case, Defendants violated clearly established law. The text of RFRA and the circumstances surrounding its passing leave no doubt that Congress intended to create comprehensive protections for religious exercise, unhindered by government interference. Plaintiffs themselves made clear on multiple occasions that the Agents' request that they serve as informants violated their religious beliefs. *See generally Tanvir*, 2023 U.S. Dist. LEXIS 31227, at *9, *13, *16. Defendants reasserted the same request, implying that failure to consent would lead to Plaintiffs' presence on the No Fly list. Defendants therefore substantially burdened Plaintiffs' rights to follow their religious practices. Each Plaintiff expressed feeling compelled to submit to questioning about their communities and contacts in order to continue

---

[7] *Id.*

to travel freely for work and to visit loved ones. Defendants knew or should have known that their actions substantially burdened Plaintiffs' free exercise of their religion.

### B. This Court's RFRA Precedent Placed Defendants on Notice of Clearly Established Law

In addition to the statute's text, Second Circuit precedent interprets RFRA as broadly protective of religious exercise. When presented with cases asking whether RFRA applies, this Court regularly falls on the side of protecting the free expression of religion. As federal law enforcement officers, Defendants bear the responsibility to know that punishing individuals for refusing to do something they consider against their religious beliefs creates a substantial burden and violates RFRA.

In *Johnson v. Killian*, this Court reinforced prisoners' rights to sustain a claim under RFRA without formally providing notice to each successive prison leader. 680 F.3d 234, 236 (2d Cir. 2012). *Johnson* illustrates this Court's broad interpretation of RFRA. In *Johnson*, an individual sought the ability to pray five times a day in congregation with his fellow Muslim inmates. *Id*. at 236. Prison policy at the time did not allow congregational prayer beyond once a day and only in the chapel. *Id*. Johnson administratively challenged the sporadically enforced procedure, but nothing changed. *Id*. With the arrival of a new warden, the prison began strictly enforcing the policy against congregational prayer outside of specified circumstances. *Id*. at 237. Johnson brought a lawsuit against the prison to challenge

10

this policy as violating RFRA by not allowing Muslim inmates to pray in congregation five times a day. *Id*. The prison argued that Johnson failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), the statute applying RFRA to incarcerated persons, since he filed his administrative complaints under the tenure of the previous warden, and his suit came under the new warden's tenure. *Id*. This Court interpreted the exhaustion requirements of RFRA and PLRA more broadly than that, holding Johnson sufficiently exhausted his administrative remedies when he gave the prison "notice of, and an opportunity to resolve, the same problem" he now complained about through litigation. *Id*. at 238. This Court held that where the government knew of the violation and did nothing to remedy it, the government remained on notice of the ongoing violation despite a change in prison leadership. *Id*. at 239. In *Tanvir*, the FBI Agents similarly knew that Plaintiffs considered acting as informants for the FBI to be against their religion. Yet government agents continued to pressure them to do so. *See, e.g.,* 2023 U.S. Dist. LEXIS 31227, at *10.

This Court's precedent declares RFRA "the full expression of Congress's intent with regard to the religion-related issues before us" and therefore affects other laws that intersect with religion. *Hankins v. Lyght,* 441 F.3d 96, 102 (2d Cir. 2006) (holding that RFRA amended the Age Discrimination in Employment Act ("ADEA") and all other laws prior and subsequent to RFRA's passing). Plaintiff

Hankins served as a minister in the Methodist Church, where official policy required that he retire at age 70. *Id*. Though Lyght, as the Bishop for Hankins' area, had the power to reappoint Hankins after his retirement, Bishop Lyght refused to do so as a personal policy. *Id*. at 100. Hankins brought an age discrimination claim against the church and Bishop Lyght. *Id*. Bishop Lyght argued that applying the ADEA violated his rights under RFRA by forcing the church to maintain a minister whom its rules required be retired. An issue of first impression for this Court at the time, this Court held that "RFRA's language surely seems *broad enough* to encompass such a case." *Id*. at 103 (emphasis added). This Court consistently broadly construes RFRA as Congress intended, providing protections for religious freedom and expression.

The 1996 case of *Jolly v. Coughlin* framed this Court's interpretation of RFRA at an early stage. 76 F.3d 468, 475 (2d Cir. 1996). In *Jolly*, this Court addressed whether claims by prisoners receive protection from RFRA. This Court concluded these claims "fall within the *broad language* of RFRA." *Id.* (emphasis added). To avoid an outbreak of tuberculosis ("TB") in the facility, a New York prison policy required inmates to submit to a "latent TB test" involving injecting a substance under the prisoner's skin. *Id*. at 471-72. A Rastafarian inmate objected, explaining that his religious beliefs prevented him from ingesting artificial substances, so he would not take the test. *Id.* at 472 The prison then kept that inmate in "medical keeplock," only allowing him out of his cell one hour a day. *Id*. at 471. This Court examined the legal

test to determine whether government action substantially burdened the plaintiff's free exercise of religion. Once again, this Court recognized that the judiciary's function is not to determine whether religious beliefs make sense to them but rather whether the individual sincerely holds the belief at issue, and whether it constitutes a religious one. *Id.* at 477. The government argued that the prisoner misunderstood the nature of the TB test; the substance was natural and did not violate the inmate's religious beliefs. *Id*. at 476. This Court ruled that kind of analysis inappropriate because the inmate asserted that the substance violated his understanding of his religion. *Id*. This Court's tests in *Jolly* re-emphasize that RFRA provides wide-ranging protection for free exercise of religion, despite the government's well-established reasons for requiring medical tests in prison.

The above cases exemplify the protection this Circuit affords religious expression. Defendants knew or should have known of the clearly established law defining a substantial burden of free exercise of religion at the time of their actions. Even if Defendants had some subjective ignorance, Plaintiffs corrected it when Plaintiffs made clear that their religious beliefs motivated their refusal to act as informants. Defendants' repeated attempts to coerce Plaintiffs violated established federal law and this Court's precedent, and they cannot invoke qualified immunity.

## II. The Southern District of New York's Qualified Immunity Analysis Conflicts with Other Circuits

The district court improperly narrowed the issue to find qualified immunity where there was none. Using its narrow definition of the right as "the right not to be pressured by law enforcement to inform on members of their religious communities through the coercive or retaliatory use of the No Fly List," the district court claimed no precedent on point existed. *Tanvir*, 2023 U.S. Dist. LEXIS 31227, at *25-26. It thus concluded that no clearly established law put Defendants on notice of the illegality of their actions. Other circuit courts have not tailored their analyses so closely, putting the Southern District of New York at odds with other courts nationwide.[8] *Amicus* respectfully requests this Court reverse and clarify the standard that district courts in this Circuit should use to define rights in qualified immunity cases.

The Tenth Circuit considers a right clearly established where previous rulings show that "materially similar conduct was unconstitutional, or if a general constitutional rule" applies to the conduct. *Estate of Reat v. Rodriguez*, 824 F.3d

---

[8] While this Brief highlights three specific examples, there are others that maintain the same broad application. *Halcomb v. Ravenell*, 992 F.3d 316, 320 (4th Cir. 2021) (balancing defining a right precisely with defining it too broadly); *Clark v. Coupe*, 55 F.4th 167, 182 (3d Cir. 2022) (citing *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)) (explaining that the court must determine the right "at the appropriate level of specificity"); *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (describing the type a case the court is looking for as "closely analogous - though not necessarily identical").

14

960, 965 (10th Cir. 2016) (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008)). Prior government conduct need not be the same or even materially similar to the analyzed actions where the "contours of the right [are] sufficiently clear that a reasonable official would understand" that his conduct violates the right. *Id.* (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Relevant Supreme Court and circuit court precedent enable district courts to determine the obviousness of the government's violation. Plaintiffs may even rely on the "weight of authority from other courts" to demonstrate the correctness of their framing of the right. *Ralston v. Cannon*, No. 19-1146, 2021 U.S. App. LEXIS 23544, at *12 (10th Cir. Aug. 9, 2021). Though courts should analyze the facts and relevant timeframes of each case, they should not frame the right in extremely granular language or engage in "a scavenger hunt for prior cases with precisely the same facts." *Estate of Harmon v. Salt Lake City*, No. 20-4085, 2021 U.S. App. LEXIS 39942, at *14 (10th Cir. Nov. 10, 2021).

The Tenth Circuit employs a "sliding scale" where the specificity of the right at issue turns on the egregiousness of the government actor's conduct. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021); *see also Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020). General legal standards may suffice where government conduct is so egregious that it must violate a clearly established right. *Id.* at 1315. When numerous cases determine a general right, courts in the Tenth Circuit may view that

15

right as clearly established and government officials as on notice. *Estate of Harmon*, 2021 U.S. App. LEXIS 39942, at *15.

The Ninth Circuit employs a similar standard, finding a right clearly established where the state of the law at the time of the officers' conduct provides officers with fair warning of the illegality of their conduct. *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1018-19 (9th Cir. 2020) ("Therefore, we ask whether the state of the law [at the time of the officials' conduct] gave [them] fair warning that their alleged [conduct] was unconstitutional[.]") (internal citations omitted). Courts need not identify a case with identical facts where cases exist that put a reasonable officer on notice of the right at the heart of a matter. *Id*. at 1021 (determining that a decision establishing a biological parent's right applied equally to a legal guardian's right). While courts must interpret the right at a reasonable level of generality, they may deem the law to be clearly established when courts in the circuit have previously determined the crux of the right. *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (finding "retaliatory law enforcement action" too general in framing but "the right to be free from retaliatory law enforcement action even when probable cause existed for that action" sufficiently detailed). Courts must balance the level of detail with which they define the right; the district court here improperly required more detail than legally required, thereby allowing Defendants too much leeway to violate Plaintiffs' clearly established rights.

16

The Eleventh Circuit also allows plaintiffs to demonstrate clearly established law with precedent even if not identical to the conduct at issue. *Montero v. Nandlal*, 597 Fed. Appx. 1021, 1026 (11th Cir. 2014) (describing fair warning as provided most commonly by materially similar but not identical facts). Courts in the Eleventh Circuit may determine that "broad principles of law" apply to the case instead of narrowly defined rights. *Id*. (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007)). "[E]xplicit statutory or constitutional statements" also provide government actors with fair notice of clearly established law. *Id*. Taking all evidence in the light most favorable to a plaintiff, courts should not find qualified immunity applicable at the motions stage where questions of fact remain for the fact-finder to determine. *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022) (citing *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020) (recognizing the defense of qualified immunity as one best suited for trial)). The Southern District of New York ignored the presence of multiple ways that clearly established law placed these Defendants on notice: broad principle, statutory and constitutional statement, and egregious conduct. *See id*. at 1263 (listing the three ways a right may become clearly established to defeat a qualified immunity defense).

## CONCLUSION

Our courts and Congress recognize the free exercise of religion as one of the most fundamental aspects of our society. Congress enacted RFRA to provide

17

comprehensive protections for Americans' right to worship as they please, absent substantial government burden. This Court regularly recognizes the statute's role in providing that protection, applying RFRA's language broadly as Congress intended. The district court improperly narrowed the analysis and required a showing too specific to comport with RFRA or with case law. *Amicus* respectfully requests this Court find the language of RFRA sufficiently put Defendants on notice of well-established law, defeating the defense of qualified immunity. Amicus therefore respectfully urges this Court to reverse the district court's decision and remand the case for further proceedings.

Respectfully submitted this 4th day of August 2023,

*/s/ Christina A. Jump*
Christina A. Jump
Samira S. Elhosary
Constitutional Law Center for
Muslims in America
100 N. Central Expy. Ste. 1010
Richardson, TX 75080
(972) 914-2507

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. of App. P. 32 and 29(a)(5) and Second Cir. R. 32.1 and 29.1(c), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(a)(5) because this brief contains 4,090 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point type. As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of their word processing system in preparing this certificate.

Dated: August 4, 2023,

*/s/ Christina A. Jump*
Christina A. Jump

*Counsel for Amicus Curiae*

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF delivery on August 4, 2023, on counsel or parties of record on the service list.

Dated: August 4, 2023.

Respectfully submitted,

*/s/ Christina A. Jump*
Christina A. Jump

*Counsel for Amicus Curiae*
